■ In the Matter of JOHN M. REGAN, Respondent, v MARCO M. FRISONE, INC., Appellant. (Appeal No. 1.)—Order and judgment unanimously modified, on the law, in accordance with memorandum and, as modified, affirmed, without costs. Memorandum: Petitioner-respondent John Manning Regan (Regan) brought the instant proceeding pursuant to section 475 of the Judiciary Law to fix a lien for attorney's fees and disbursements upon the proceeds of a money judgment which was rendered in favor of his client, respondent-appellant Marco M. Frisone, Inc. (Corporation). The Corporation appeals from a judgment in Regan's favor in the sum of $23,859.48. Appellant does not challenge the reasonableness of the amount fixed by Special Term. Its sole contention is that a retainer agreement between Regan and "Marco M. Frisone, individually", which contained a handwritten addendum limiting legal fees payable "under this agreement" to $20,000, constituted a bar to Regan's claim under section 475 of the Judiciary Law. Special Term's memorandum decision fully sets forth all of the pertinent facts, and properly determined that the retainer agreement was unambiguous, that it did not bar Regan's *quantum meruit* claim for legal services against the Corporation. Special Term noted that its decision did not prevent Frisone *individually from commencing an action on the retainer agreement, but only prevented the agreement from being used as a defense to Regan's claim of an attorney's lien against the Corporation. We agree with this determination. However, we do not agree with the amount of the lien found by Special Term. Section 475 of the Judiciary Law provides that the attorney's lien attaches "to a * * * judgment or final order in his client's favor, and the proceeds thereof in whatever hands they may come". At the reargument hearing, Regan made clear that his lien petition pertained to the Pelbro foreclosure action and the actions tried jointly with it in late 1970, but not to any other matters he may have handled for the Corporation. Regan also indicated, however, that not all of the Corporation's funds held by him were "proceeds" of the Pelbro foreclosure judgment. Frisone indicated that Regan held over $86,000 collected in various matters that he had handled for Frisone. While Regan did not confirm that figure, he did acknowledge that he had handled "substantial other litigation for Mr. Frisone" which had "nothing to do with the Pelbro cases", and that he and his client were negotiating as to fees in those other matters. The Pelbro foreclosure judgment, Regan stated, had been satisfied in August, 1972 by payment into his hands of $67,152.97, some 60% of which (i.e., $39,714.40) he distributed to subcontractors on behalf of the Corporation according to an agreement. Of the remaining $27,440.83, he paid Frisone $4,000, and took "approximately $4,000" for himself as partial payment for services. He kept the remaining $16,000 of the proceeds of the Pelbro judgment at interest in a bank pending resolution of his dispute with Frisone. The statutory attorney's lien under section 475 of the Judiciary Law, like its predecessor, the common law "charging lien", is not a lien for the general balance of any account owing to the lawyer from the client, but only for the value of services rendered in the particular action which produced the recovery sought to be charged (see *Matter of Heinsheimer,* 214 NY 361, 364-365). "If, then, an attorney prosecutes a number of suits for a client, the lien given him by law

on the recovery in any one suit is only for his compensation in that suit, not for his compensation in all of them" *(Matter of McCrory Stores Corp.,* 19 F Supp 691, 693; *Lebaudy v Carnegie Trust Co.,* 222 NY 525, 526; *Matter of Weldon v DeMartini,* 35 Misc 2d 710, 711). At the hearings, Special Term took a position inconsistent with the foregoing cases by ruling that Regan "shall have a lien against those monies that he now holds of the Corporation" for disbursements and services rendered, and that "he may have judgment therefor against the Corporation in such sum". The order of February 26, 1974 gives the lien an even broader scope. It provides that the lien is fixed "upon funds now in, or coming into [Regan's] hands, the property of respondent, Marco M. Frisone, Inc.", and provides further that "judgment may be entered in the full amount of said lien" and that Regan "may have execution therefor". The judgment entered upon that order provides that "petitioner do recover of Marco M. Frisone, Inc." the total sum of $23,859.48. A lien pursuant to section 475 of the Judiciary Law "can be enforced by appropriate order of the court which may direct the lien be satisfied out of moneys or property *to which the lien attaches* though not in the possession of the attorney" *(Matter of Cooper [McCauley],* 291 NY 255, 260 [emphasis supplied]), but, as has been said, the lien "attaches" only to "proceeds" of the particular actions for which attorney's fees are sought (see *Heinsheimer, McCrory Stores, LeBaudy,* and *DeMartini, supra).* Thus, the February 26, 1974 order, and the judgment entered thereon, are erroneous insofar as they operate to permit enforcement of the lien out of funds to which it could not legally attach. They necessarily operate in that manner, because they allow execution upon nearly $24,000, whereas the sum in Regan's hands to which the lien could attach amounted to only $16,000, plus interest. Appellant's final contention is that "petitioner is not entitled to a judgment in the instant proceeding". He relies on *Matter of Fox v Gina Constr. Corp.* (22 Misc 2d 177, 178), where the following dictum appears: "Even if this proceeding came within the ambit of section 475 of the Judiciary Law, no direction could be made for the payment of the amount of the attorney's lien nor for the entry of a personal judgment with the right of execution. *(Matter of Waxstein v. Gelbman,* 130 N. Y. S. 2d 285 and the authorities there cited.)* All the court could do in such a proceeding is to determine the reasonable value of the services of the attorney of record and declare such amount a charge or lien upon any moneys or property which his client may recover in the particular action by way of judgment or settlement. *(Matter of Cooper [McCauley],* 291 N. Y. 255, 260.)* Once the value of the attorney's services is thus determined it is conclusive upon the parties in any subsequent proceeding or action for the enforcement or collection of the amount of such lien. *(Roulstone v. Oesterreicher,* 188 Misc. 741 and the authorities there cited.)" This case is of no support for appellant's contention, for in *Fox* there was "no particular action or proceeding; the proceeds of which could be charged" with the lien *(supra,* p 178). It is true in every case, however, that the court in a section 475 proceeding is without authority to direct entry of a *personal* judgment against the client *(Matter of Wellman v Lipkind,* 226 App Div 106). The judgment is defective insofar as it purports to operate in personam against the Corporation. Also the February 26, 1974 order is defective insofar as it would allow enforcement of the lien against moneys which are not proceeds of the Pelbro judgment. The order and judgment are modified by reducing the amount of the judgment to $16,000 plus the interest earned on that amount. (Appeal from order and judgment of Monroe Supreme Court—attorney's fees.) Present—Cardamone, J. P., Mahoney, Dillon, Goldman and Witmer, JJ.