**COURT OF CHANCERY
OF THE
STATE OF DELAWARE**

MORGAN T. ZURN
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

March 2, 2023

Jenness E. Parker, Esquire
Skadden, Arps, Slate, Meagher & Flom LLP
920 North King Street
Wilmington, DE  19801

Brian M. Rostocki, Esquire
Reed Smith LLP
1201 North Market Street, Suite 1500
Wilmington, DE  19801

Cheryl A. Santaniello, Esquire
Porzio Bromberg & Newman, P.C.
300 Delaware Avenue, Suite 1220
Wilmington, DE  19801

RE: ***AutoLotto, Inc. v. J. Streicher Financial, LLC,***
Civil Action No. 2022-0661-MTZ

Dear Counsel:

I write to resolve in part the Combined Motion to Withdraw as Counsel and for a Charging Lien filed by Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden"), particularly the motion for a charging lien (the "Motion"). The Motion is granted, but only with respect to Skadden's work for petitioner AutoLotto, Inc. in the above-captioned matter, and not with respect to Skadden's work for AutoLotto in other matters. My reasoning follows.

### I.   BACKGROUND

In 2022, AutoLotto retained Skadden on an hourly basis for the purpose of obtaining general corporate and transactional advice.[1]   The engagement letter includes a choice of law clause selecting New York law:

> This agreement and any claim, controversy or dispute arising under or relating to this agreement, the relationship of the parties, and/or the interpretation and enforcement of the rights and duties of the parties, and/or the interpretation and enforcement of the rights and duties of the parties shall be governed by, and construed in accordance with, the laws of the state of New York.[2]

Under the engagement letter, Skadden represented AutoLotto in this action to secure the return of $16,500,000 in escrowed funds held by defendant J. Streicher Financial, LLC ("J. Streicher").[3]   On September 26, 2022, I granted partial summary judgment in AutoLotto's favor and ordered J. Streicher to return the escrowed funds.[4]   I also shifted AutoLotto's attorneys' fees in the amount of $397,036.94 and entered an order reflecting the parties' stipulation that J. Streicher would pay those fees no later than November 30, 2022 (the "Fee Order").[5]

---

[1] Docket Item ("D.I.") 45 [hereinafter "Mot."] ¶ 1.

[2] Mot., Ex. 1.

[3] *Id.*

[4] D.I. 35.

[5] D.I. 38.

On December 8, 2022, Skadden filed the Motion seeking a charging lien in the amount of $3,024,201.17 against the $16,500,000 awarded in this matter, representing unpaid fees not only for its representation of AutoLotto in this action, but also for its representation and work for AutoLotto in a variety of other matters.[6] The parties briefed the Motion, and I took it under advisement on January 13, 2023.[7] Skadden's motion to withdraw will be granted under separate cover.

## II.     ANALYSIS

The parties dispute whether all of Skadden's outstanding fees are properly subject to a charging lien against the award in this specific action, and whether that issue should be guided by New York or Delaware law.  AutoLotto also contends that no charging lien against it is necessary because the Court shifted its fees to J. Streicher; AutoLotto suggests Skadden may and should recover from J. Streicher instead.  This letter concludes that under both New York and Delaware law, Skadden is entitled to a charging lien against the recovery in this action only for fees incurred in this action, and the Fee Order cannot substitute for or preclude the charging lien to which Skadden is entitled.

---

[6] Mot. ¶ 5.

[7] D.I. 51; D.I. 58; D.I. 55.

When faced with a dispute over which law governs, the Court's first step is to determine whether there is an actual conflict of law between the proposed jurisdictions.[8] Where the result would be the same under either proposed jurisdiction, there is no actual conflict: rather, "there is a 'false conflict,' and the Court should avoid the choice-of-law analysis altogether."[9]

### A. Scope of the Charging Lien

In New York, charging liens are governed by a statute providing that "the attorney who appears for a party has a lien upon his or her client's cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, award, settlement, judgment or final order in his or her client's favor."[10] New York courts have consistently held an attorney's charging lien only covers fees incurred for services provided in the particular action that yielded the recovery, not other matters.[11] Under New York law, the scope of Skadden's charging lien is

---

[8] *Bell Helicopter Textron, Inc. v. Arteaga*, 113 A.3d 1045, 1050 (Del. 2015).

[9] *Deuley v. DynCorp Int'l, Inc.*, 8 A.3d 1156, 1161 (Del. 2010) (quoting *Berg Chilling Sys., Inc., v. Hull Corp.*, 435 F.3d 455, 462 (3d Cir. 2006)).

[10] N.Y. Jud. Law § 475 (McKinney 2022).

[11] *See* 7 Russell J. Davis et al., *N.Y. Jur. 2d Attorneys at Law* § 310 (2023) ("As a general rule, an attorney's charging lien extends only to disbursements and services in the particular action or proceeding in which they were incurred or rendered, and does not cover a general balance due the attorney or charges incurred for services rendered in other matters . . . ."); *see e.g.*, *Kaplan v. Reuss*, 495 N.Y.S.2d 404, 406 (1985), *aff'd*, 68 N.Y.2d 693 (1986) ("A charging lien . . . applies only to the proceeds obtained from a

therefore limited to its fees incurred while representing AutoLotto in the above-captioned matter, and does not extend to its other work for AutoLotto.

Delaware law is in accord. Delaware recognizes charging liens as a common law equitable right.[12] The Delaware Supreme Court has defined a charging lien such that its scope covers only fees incurred to prosecute the litigation in which the lien is sought. In *Katten Muchin Rosenman v. Sutherland*, the Delaware Supreme Court defined a charging lien as "an equitable right to have costs advanced and attorney's fees secured by the judgment entered *in the suit wherein the costs were advanced and the fee earned*."[13] Under the *Katten* definition, Skadden may seek a charging lien secured by the judgment in this matter for its work "in the suit wherein the costs were advanced and the fee earned," meaning only in this matter.

---

particular litigation and may be enforced only to obtain the reasonable value of the attorney's services and disbursements in connection with that litigation."); *First Nat. Bank & Tr. Co. of Ellenville v. Hyman Novick Realty Corp.*, 421 N.Y.S.2d 733, 734 (1979) ("A statutory attorney's lien pursuant to section 475 of the Judiciary Law is a lien only for the value of services rendered in the particular action which produced the recovery sought to be charged.").

[12] *See Katten Muchin Rosenman v. Sutherland*, 153 A.3d 722, 726 (Del. 2017).

[13] *Id.* at 726 (emphasis added) (adopting the definition set forth in *Zutrau v. Jansing,* 2014 WL 7013578 (Del. Ch. Dec. 8, 2014), *aff'd*, 123 A.3d 938 (Del. 2015), and 7A Kristina E. Music Biro et al., *C.J.S. Attorney & Client* § 523 (2023)).

In attempting to skirt this plain definition, Skadden cites other language in *Katten* providing that unpaid fees need not "directly relate to a client's recovery" to be encompassed by a charging lien.[14] But that language clarified a lien is available for all unpaid fees incurred within a matter.[15] Nothing in *Katten* suggests a charging lien could encompass unpaid fees in other matters.

Second, Skadden asserts that whether a charging lien can cover fees beyond those incurred in the litigation in which the lien is sought is an "unsettled issue of Delaware law" based on *Zutrau v. Jansing*.[16] I read *Zutrau* differently: the issue this Court declined to decide was whether a lien could be asserted on a plaintiff's entire recovery, or only that amount over and above an amount the defendant initially offered, i.e., the "amount of the benefit recovered."[17] *Zutrau* has no bearing on whether a charging lien is properly asserted for unpaid fees in other matters.

Thus, there is no conflict between New York and Delaware law, and I need not decide which governs. Delaware and New York law reach the same result with respect to the scope of the charging lien: Skadden is entitled to a charging lien on

---

[14] Mot. ¶ 18.

[15] *Katten*, 153 A.3d at 727.

[16] D.I. 53 ¶ 5; *Zutrau*, 2014 WL 7013578.

[17] 2014 WL 7013578, at *2–3.

AutoLotto's recovery in this matter for its fees earned in this matter, and not its other matters. I grant Skadden's motion for a charging lien with respect to the $397,036.94 in attorneys' fees earned in this action.

### B.     The Fee Order

AutoLotto also argues that no charging lien is warranted at all. AutoLotto suggests that "[i]f the Fee Order does not clearly or specifically entitle Skadden to directly enforce it against J. Streicher on Skadden's behalf . . . Skadden may do so, subject to AutoLotto's claims and defenses against Skadden, including any breach of contract or breach of fiduciary duty."[18] AutoLotto urges this Court to accept this alternative rather than impose a charging lien, pressing it offers Skadden a "superior right" to obtain payment directly from J. Streicher, and that Skadden is in

---

[18] D.I. 51 ¶ 4. AutoLotto provides no authority under New York or Delaware law to suggest that the amount of a charging lien could be reduced by its "claims and defenses against Skadden." However, "the premise for imposing a charging lien is that an attorney is owed money" for services performed. *Zutrau*, 2014 WL 7013578, at *4. In *Katten*, the court expressed that attorneys are owed all unpaid fees from litigation, and the balance due could not be reduced depending on whether the client won or lost. There, the court noted that "[t]o permit a client who is a party to such an [hourly fee] agreement to escape a charging lien . . . is to judicially rewrite the contract at the expense of the attorney and to undermine the traditional purpose of a charging lien." *Katten*, 153 A.23d at 728. Thus, *Katten* suggests that Delaware courts strongly disfavor interfering with the amount of fees that attorneys are owed for services performed in accordance with hourly fee agreements. Moreover, AutoLotto has not asserted any such breach of contract or breach of fiduciary duty claims.

a "better position to bear" the costs of collection.[19] AutoLotto's suggestion has no bearing on Skadden's established right under both Delaware and New York law to assert a charging lien against AutoLotto's recovery.

AutoLotto provides no authority under either New York or Delaware law supporting its suggestion that Skadden's entitlement to secure its debt against AutoLotto's recovery could be satisfied by allowing Skadden to pursue an ancillary recovery from J. Streicher. And hornbook authority refutes AutoLotto's suggestion: "[T]hat an allowance has been made for attorney's fees to be paid by a third person may not affect the lien of an attorney as against the attorney's own client."[20] In New York, where charging liens are governed by statute, "[t]he statute has provided a lien in all cases, and not merely where the client fails to provide some other form of security or protection, and the courts cannot themselves substitute another form of protection for that provided in the statute."[21] And in

---

[19] D.I. 51 ¶ 24.

[20] 7A Kristina E. Music Biro et al., *C.J.S. Attorney & Client* § 523 (2023); *see also id.* § 540 ("The attorney's charging lien is only a lien on the fruits of the attorney's labor and is not intended to give a general lien on any other assets of the client.").

[21] *Robinson v. Rogers*, 237 N.Y. 467, 472 (1924). The New York statute specifies that a charging lien may "attach[] to a verdict, report, determination, decision, award, settlement, judgment or final order in his or her client's favor." N.Y. Jud. Law § 475 (McKinney 2022). Therefore, "[t]he tangible 'fruit' of an attorney's services to which a charging lien can attach is generally money, property, or other actual proceeds gained by means of the claims asserted for the client in the litigation." 7 Russell J. Davis et al., *N.Y. Jur. 2d Attorneys at Law* § 327 (2023).

Delaware, "[t]o permit a client who is a party to such an [hourly fee] agreement to escape a charging lien . . . is to judicially rewrite the contract at the expense of the attorney and to undermine the traditional purpose of a charging lien,"[22] namely to "compensat[e] the attorney for her efforts" and "encourag[e] attorneys to provide legal services to clients."[23]  Allowing counsel to pursue a fee award against its client's adversary is a poor substitute for a charging lien in view of those purposes. Skadden has the right to secure its debt, in the amount of unpaid fees owed in this action, against AutoLotto's recovery.

## III.  CONCLUSION

For the foregoing reasons, the Combined Motion to Withdraw as Counsel and for a Charging Lien is **GRANTED IN PART**.

Sincerely,

*/s/ Morgan T. Zurn*

Vice Chancellor

MTZ/ms

cc: All Counsel of Record, via File & ServeXpress

---

[22] *Katten*, 153 A.23d at 728.

[23] *Id.* at 726–27; *see also Zutrau*, 2014 WL 7013578, at *4 ("[T]he premise for imposing a charging lien is that an attorney is owed money.").